UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CHELSEA SMITH, MARY KAUFMAN,
NAUTICA OATES, SHELBIE HEISLER,
and NILSA HIDALGO,

    Plaintiffs,

vs.

S&C CONSULTING GROUP LLC
and SEAN P. MILLER, individually,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, CHELSEA SMITH ("Smith"), MARY KAUFMAN ("Kaufman"), NAUTICA OATES ("Oates"), SHELBIE HEISLER ("Heisler"), and NILSA HIDALGO ("Hidalgo") (collectively "Plaintiffs"), by and through undersigned counsel, sue Defendants, S&C CONSULTING GROUP LLC, ("S&C") and SEAN P. MILLER ("Miller"), individually, (collectively, "Defendants") and for their causes of action, declare and aver as follows:

### INTRODUCTION

1. Plaintiffs bring this action to recover from Defendants unpaid wages, including statutory minimum wages, liquidated damages, costs, and reasonable attorneys' fees, under the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and specifically under 29 U.S.C. § 216(b) ("FLSA"), retaliation under the FLSA, and for violations of 26 U.S.C. § 7434 ("section 7434").

2. This Court is vested with federal question jurisdiction over Plaintiffs' claims arising under the FLSA and section 7434, pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 216(b) and 26 U.S.C. § 7434.

Page **1** of **9**

3. Venue is appropriate in the Southern District, per 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida and all parties, including Defendants, reside in or are domiciled in the Southern District of Florida.

4. All statutory and administrative prerequisites have been met, waived, or abandoned prior to the filing of this action.

## PARTIES

5. Smith is a United States citizen, a resident of Martin County, Florida, and otherwise within the jurisdiction of this Court.

6. Kaufman is a United States citizen, a resident of Palm Beach County, Florida, and otherwise within the jurisdiction of this Court.

7. Oates is a United States citizen, a resident of Palm Beach County, Florida, and otherwise within the jurisdiction of this Court.

8. Heisler is a United States citizen, a resident of Palm Beach County, Florida, and otherwise within the jurisdiction of this Court.

9. Hidalgo is a United States citizen, a resident of Palm Beach County, Florida, and otherwise within the jurisdiction of this Court.

10. S&C is a Florida corporation, doing business in Florida, and otherwise within the jurisdiction of this Court.

11. Miller is a United States citizen, a resident of Palm Beach County, Florida, and otherwise within the jurisdiction of this Court.

12. At all times material hereto, S&C was duly authorized and licensed to do business in Palm Beach County, Florida, and the State of Florida, generally.

13. At all times pertinent to this action, S&C was an "employer" under the FLSA. S&C was each Plaintiff's "employer" as it relates to these claims.

14. At all times material hereto, Miller owned and operated S&C. Miller controlled

each Plaintiff's duties, hours worked, and compensation, and managed the day-to-day operations of S&C, including the financial operations. Accordingly, Miller was an "employer" of each Plaintiff within the meaning of 29 U.S.C. §203(d).

## GENERAL ALLEGATIONS

15. S&C is a marketing company that works with telehealth companies.

16. S&C engaged in interstate commerce on a regular and recurring basis within the meaning of the FLSA, including but not limited to handling or working with goods or materials that have moved through interstate commerce, including pencils, pens, computer mice, monitors, towers, office telephones, computer modems, etc.

17. Upon information and belief, S&C has at least two employees who were engaged in commerce, as described in paragraph 16.

18. Upon information and belief, S&C had an annual gross sales made or business done of $500,000 or more in the previous three calendar years, 2020-2022.

19. Smith worked for S&C and Miller from January 2021 until her termination on January 11, 2023.

20. Oates worked for S&C and Miller from May 2022 until her termination on December 30, 2022.

21. Smith and Oates' job duties were to contact potential patients and conduct a medical intake for the purpose of passing along these intakes to doctors for medical screenings.

22. Smith and Oates would contact patients from all over the United States by telephone, including patients outside of the State of Florida, at least five times per week.

23. Smith and Oates are, thus, individually covered under the FLSA by using the telephone as an instrumentality of interstate commerce as a regular and recurrent part of their job duties

24. Heisler worked for S&C and Miller from November 2018 until her termination on

December 30, 2022. Due to previously scheduled time off, Heisler's last day of work performed was December 27, 2022.

25. Heisler's primary job duty was insurance verification. She would ensure patients' insurances would cover the procedures recommended by the doctors. To do so, she would use the Internet to access a database called PVerify that is hosted in California. Heisler would perform this task at least five times per week.

26. Heisler is, thus, individually covered under the FLSA by using the Internet as an instrumentality of interstate commerce as a regular and recurrent part of her job duties.

27. Hidalgo worked for S&C and Miller from May 2022 until her termination on December 30, 2022.

28. Hidalgo's job duties were colloquially known as "kit chasing." Hidalgo would contact patients to arrange for the transport of a medical sample kit to a laboratory. She would also coordinate with a courier service, such as UPS, to arrange pickup of that kit. To do so, she would use the telephone to call both the patient and the courier.

29. Hidalgo would coordinate with patients outside of the State of Florida at least five times per week. Further, if the patient was located or domiciled outside of the State of Florida, so too were the local UPS or other courier branches.

30. Hidalgo is, thus, individually covered under the FLSA by using the telephone as an instrumentality of interstate commerce as a regular and recurrent part of her job duties.

31. Kaufman worked for S&C and Miller from April 2019 until her termination on January 11, 2023.

32. In addition to performing Smith, Oates, and Hidalgo's job duties at one time or another, Kaufman also conducted medical intake interviews with affiliates to ensure accurate information and transferred affiliate calls to the telemedicine practitioners.

33. Kaufman would conduct these intake interviews with affiliates outside of the State

of Florida at least five times per week.

34. Kaufman is, thus, individually covered under the FLSA by using the telephone and the Internet as instrumentalities of interstate commerce as a regular and recurrent part of her job duties

35. All Plaintiffs were paid biweekly. The paychecks typically were standard "payroll style" checks, which show the gross amounts of pay, deductions, and, ultimately, the net amount payable to the employee. All Plaintiffs were normally paid via direct deposit.

36. In some pay periods, Defendants paid Plaintiffs with a business check written for the net amount payable, without showing that deductions were taken out. Further, some Plaintiffs were paid in cash at times, without any payroll taxes taken out on these payments.

37. Upon information and belief, the cash payments and business check payments were made with the intention of underreporting wages paid to employees to lower S&C's federal payroll tax liability and monies due to the State of Florida, including the re-employment taxes required to be paid by employers in Florida.

38. Miller actively misled Plaintiffs by claiming taxes were deducted and paid from these business check payments.

39. Beginning on or about December 2, 2022, Defendants began missing regular pay checks for hours already worked by Plaintiffs. Defendants provided Plaintiffs with checks that were not accepted by Plaintiffs' banks.

40. Plaintiffs made several demands for payment of their hard-earned wages, including verbally, via Slack, and via group text message. Defendants have not fully paid all owed wages as of the filing of this complaint.

41. On or about December 28, 2022, Defendants terminated Oates, Hidalgo, and Heisler, along with a fourth individual. None of these Plaintiffs were provided a reason for their termination. At the time of their termination, Defendants still owed Oates, Hidalgo, and Heisler

unpaid wages, which they had made demands for. To date, these wages are still unpaid, due, and owing.

42. Further, Smith and Kaufman were terminated on or about January 11, 2023, with Defendants claiming the business was headed "in a different direction." At the time of their termination, Defendants still owed Smith and Kaufman unpaid wages, which they had made demands for. To date, these wages are still unpaid, due, and owing.

43. Upon information and belief, the unnamed fourth individual who was terminated with Oates, Hidalgo, and Heisler, was subsequently re-hired by Defendants prior to Smith and Kaufman's terminations. At the time of her re-hire, this fourth individual informed Miller that Smith and Kaufman, as well as the other Plaintiffs, intended to sue him for unpaid wages.

44. During January 2023, Defendants issued information returns, specifically Form W-2s, to Plaintiffs for their wages earned in 2022.

45. The issued information returns contained false information, which willfully misrepresented the wages paid to each Plaintiff. Specifically, the wages reported on these forms underreported the amounts earned by Plaintiffs and thus, underreported the amounts that were supposed to be withheld from their paychecks and/or paid as taxes by Defendants.

### COUNT I – VIOLATION OF THE FLSA'S STATUTORY MINIMUM WAGE PROVISIONS (ALL PLAINTIFFS)

46. Plaintiffs reaver and reallege all allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

47. Defendants willfully failed to pay Plaintiffs for certain pay periods beginning December 2, 2022, depriving them of lawfully earned minimum wages. The full extent of Defendants' compliance with the FLSA will need to be determined during discovery.

48. By reason of the willful and unlawful acts of Defendants, all Plaintiffs situated have suffered damages.

49. Plaintiffs are entitled to monetary damages for Defendant's willful violation of the

FLSA's statutory minimum wage provisions.

50. As a result of Defendants' violation of the Act, all Plaintiffs are entitled to liquidated damages in an amount equal to that which they are owed as unpaid statutory minimum wages.

WHEREFORE, Plaintiffs demand judgment against Defendants for the statutory minimum wages due them, liquidated damages, reasonable attorneys' fees and costs of suit, and for all other relief the Court deems just and proper.

### COUNT II – VIOLATION OF 26 U.S.C. § 7434 – ALL PLAINTIFFS

51. Plaintiffs reaver and reallege all allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

52. Defendants issued Plaintiffs information returns, specifically Form W-2s, for wages paid to them in calendar year 2022.

53. Defendants willfully and intentionally underreported each Plaintiffs' incomes on the Form W-2s.

54. Particularly, Defendants willfully and intentionally did not report on the Form W-2s the amounts which were paid to Plaintiffs either (1) in cash or (2) by business check that did not resemble a "payroll style" check, which would specifically identify the tax deductions made from each paycheck. In other words, Defendants only reported Plaintiffs' incomes for checks issued through payroll, which was not the true amount of their earned wages.

55. By only reporting the incomes for checks issued through payroll, Defendants willfully and intentionally reported the incorrect amount of earned income on the information returns issued to Plaintiffs. By doing so, Defendants lowered the employer's share of the FICA, FUTA, and other federal and state income taxes on paychecks issued to Plaintiffs.

56. Upon information and belief, Defendants reported these incorrect earned income figures to the IRS.

57. Defendants willfully underreported Plaintiffs' incomes to lower the amount of taxes they owed to both the IRS and the State of Florida. Upon information and belief, and only as one example, Defendants reported paying $0.00 in wages for the first (Jan-Mar) and second (Apr-Jun) quarters of 2022, while Defendants employed each Plaintiff, relating to Florida's re-employment taxes, significantly reducing Plaintiffs' maximum re-employment benefit amounts.

58. Further, the underreporting of Plaintiffs' incomes has an ongoing negative impact for any activity requiring the verified reporting of income, including but not limited to, re-employment benefits and their credit scores.

59. Upon information and belief, at least one Plaintiff has already been materially affected by Defendants' actions relating to re-employment benefits.

60. Based on Defendants' intent to deceive both the IRS and the State of Florida by willfully and fraudulently filing Plaintiffs' IRS Form W-2s, they are liable to each Plaintiff in an amount equal to the greater of $5,000, or the sum of any actual damages sustained by each Plaintiff due to such filing, the costs of this action, and reasonable attorneys' fees.

61. All statutory and administrative prerequisites have been met, waived, or abandoned prior to the filing of this action.

WHEREFORE, Plaintiffs demand judgment against Defendants pursuant to 26 U.S.C. §7434(b)(1)-(3) for the greater of $5,000, or the sum of the actual damages sustained by each Plaintiff as a result of the fraudulent filing plus reasonable attorney fees, costs, and expenses incurred in the prosecution of this action, and for all other relief the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

| | |
|---|---|
| Dated: January 20, 2023<br>Boca Raton, FL | Respectfully submitted,<br><br>**Alex B.C. Ershock**<br>DANIEL R. LEVINE, ESQ.<br>Florida Bar No. 0057861<br>E-Mail:  DRL@PBL-Law.com<br>ALEX B.C. ERSHOCK, ESQ.<br>Florida Bar No. 100220<br>E-Mail:  ABE@PBL-Law.com<br>PADULA BENNARDO LEVINE, LLP<br>3837 NW Boca Raton Blvd., Suite 200<br>Boca Raton, FL   33431<br>Telephone:    (561) 544-8900<br>Attorneys for Plaintiff |